United States District Court
Southern District of Texas

**ENTERED**

July 01, 2020

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOHN ANTHONY BUCHANAN,<br>SPN #02981929,<br><br>Plaintiff,<br><br>v.<br><br>CORONDA HARRIS, et al.,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. H-19-4571 |

## MEMORANDUM OPINION AND ORDER

The plaintiff, John Anthony Buchanan (SPN #02981929), filed a handwritten Complaint (Docket Entry No. 1), followed by an Amended Complaint (Docket Entry No. 6), challenging the conditions of his confinement at the Harris County Jail. After the court issued an Order for More Definite Statement (Docket Entry No. 9), Buchanan filed a Second Amended Complaint (Docket Entry No. 12), which clarified his claims against several individual defendants. He also submitted Plaintiff's Response to [the] Court's Order for More Definite Statement ("Plaintiff's MDS") (Docket Entry No. 17) and a letter acknowledging that this civil action is governed by the screening requirement and other provisions implemented by the Prison Litigation Reform Act ("PLRA") (Docket Entry No. 20). After considering all of the pleadings under the applicable legal standard, the court will dismiss this case for the reasons explained below.

## I. Background

### A. The Parties

Buchanan is currently incarcerated in the Harris County Jail (the "Jail"), which is operated by the Harris County Sheriff's Office, as the result of charges that are pending against him in state court for aggravated assault.[1] Buchanan describes himself as a "transtibial, disabled, pretrial detainee."[2] Buchanan clarifies that his right leg is amputated below the knee.[3] As a result, he ambulates with a prosthetic limb and a walker.[4]

Invoking the Americans with Disabilities Act (the "ADA") and 42 U.S.C. § 1983, Buchanan has filed this lawsuit against the following defendants: (1) Coronda Harris, who serves as the "Harris County Human Resources and Risk Management ADA Coordinator"; (2) Detention Officer Wang; (3) Nurse Brandi Hawking; (4) Sergeant J. Wheeler; (5) William Laws, who serves as the "ADA Compliance Coordinator in the Health Services Department" at the Jail; (6) Detention Officer W. Gibson; (7) Detention Officer Pickens-Wilson; and (8) Detention Officer Mendoza.[5] Harris, Laws, and Gibson are sued in both their official and individual

---

[1]Second Amended Complaint, Docket Entry No. 12, p. 3. For purposes of identification, all page numbers refer to the pagination imprinted by the court's Electronic Case Filing ("ECF") system.

[2]Id.

[3]Plaintiff's MDS, Docket Entry No. 17, p. 5.

[4]Id. at 6.

[5]Second Amended Complaint, Docket Entry No. 12, pp. 4-5.

-2-

capacities.[6]  All other defendants are sued only in their individual capacities.[7]

**B.    Buchanan's Allegations**

At around 5:05 a.m. on November 8, 2019, Buchanan alleges that he was asleep in housing unit 2H1, which he describes as an "ADA compliant handicap housing unit," when Officer Mendoza woke him to ask if he wished to respond to a "conduct report" that was lodged against him by Officer Wang for violating Jail disciplinary rules.[8] Buchanan approached Officer Wang at the "Detention Officer's window" in the picket "to demand a copy of the Confirmation of Service Form" for the conduct report so that he could be "made aware of the alleged rule violation."[9]   Noting that she had provided him with such a form in connection with a conduct report that he had received on a previous occasion, Buchanan told Officer Wang that she was "required" to provide him with one in order to comply with his right to "Due Process and Equal Protection."[10]  When she could not or would not produce one, Buchanan then asked Officer Wang for a "formal grievance [form]" so that he could "address the Due Process and Equal Protection violations" she had committed.[11]

--------

[6]Id.

[7]Id.

[8]Id. at 6.

[9]Id. at 6-7.

[10]Id. at 7.

[11]Id.

Officer Wang advised Buchanan that she did not have a formal grievance form, but that "he could write his grievance on any piece of paper, which is stated within the Harris County Sheriff's Office inmate handbook."[12]  Buchanan then asked to speak to the "third-shift supervisor" that day, Officer Pickens-Wilson, but Officer Wang denied his request.[13]  Officer Mendoza then "intervened" by using profanity and telling Buchanan to "get away" from the picket.[14]  At that point, Buchanan returned to his bed.[15]

As Buchanan was returning to his bed, he observed Officer Wang and Officer Mendoza looking in his direction and laughing.[16] Buchanan watched as Officer Mendoza left the picket and Officer Wang picked up the phone.[17]  Buchanan believes that Officer Wang placed a phone call to the supervisor, Officer Pickens-Wilson.[18] As Officer Wang continued to laugh while looking in Buchanan's direction, Buchanan "stuck his middle finger up at Officer Wang."[19] Buchanan then heard Officer Wang say into the phone, "yeah, he just stuck his middle finger up at me."[20]

---

[12] Id.

[13] Id.

[14] Id. at 8.

[15] Id.

[16] Id.

[17] Id.

[18] Id.

[19] Id.

[20] Id.

Several hours later, another officer arrived at Buchanan's housing unit and advised him to pack his property because he was being transferred.[21] After packing his property, Buchanan was told that he was being moved from housing unit 2H1 to "D-pod" in the general population.[22]

During the transfer process Buchanan was taken to the Jail classification department, where Officer Gibson was working that day.[23] Buchanan asked Gibson why he was being moved from ADA-compliant housing in unit 2H1 to the general population, noting that he was "a transtibial amputee."[24] According to Buchanan, Gibson responded "with malicious intent to deny the plaintiff equal protection and indifferent to the substantial risk of harm to the plaintiff based on his serious medical needs," that the transfer was necessary because Gibson "had to switch [Buchanan] with a 75-year-old man with glaucoma," who needed special housing.[25] Officer Gibson advised Buchanan to speak with a supervisor to see if there was someone else they could switch instead.[26] Gibson told Buchanan that if they could find someone else, Gibson would make that switch.[27]

---

[21]Id. at 9.

[22]Id.

[23]Id.

[24]Id.

[25]Id.

[26]Id.

[27]Id.

Buchanan immediately contacted Sergeant Wheeler, who replied that there was nothing he could do and that the housing assignment was "out of [Wheeler's] control."[28] When Buchanan became frustrated and refused to accept the new housing assignment, Sergeant Wheeler responded "with deliberate, malicious intent to trample the plaintiff's right to Equal Protection under the ADA" by threatening to place Buchanan in "handcuffs" and "drag" him to D-pod.[29] After Buchanan reminded Sergeant Wheeler of his disability, Wheeler agreed to speak with the classification department on Buchanan's behalf, but he advised Buchanan to file a grievance if Wheeler could not get the assignment changed.[30] Wheeler then provided Buchanan with a grievance form for him to use in the event that he needed to challenge his housing assignment.[31]

When Buchanan arrived at D-pod, he observed that there were "no toilets with rails, no handicap sinks, no shower with a seat or hand rails, or other amenities" that Buchanan previously had access to in housing unit 2H1.[32] Without these accommodations, Buchanan alleges that he suffered "discomfort" when using the toilet and that he developed "sores on his residual limb" because he was

---

[28]Id. at 10.

[29]Id.

[30]Id.

[31]Id.

[32]Id. at 10-11.

unable to access the shower or clean his "prosthetic liners,"[33] which he describes as the "rubber sleeve" attached to his prosthesis.[34]

On November 9, 2019, Buchanan filed "a reasonable accommodation request combined with an accessibility grievance" with Harris and Laws, regarding his housing assignment in D-pod.[35]  On that same date, Buchanan filed a separate grievance with "the inmate services division" at the Jail.[36]  Shortly thereafter, on November 13, 2019, Buchanan was given a "white, flimsy chair" to sit on while in the shower.[37]  The "shower chair" came with a "Harris County Sheriff's Office special needs advisement dated November 12, 2019," notifying the "watch commander" that Buchanan was allowed to use the chair in the shower until he could be "placed in handicap housing."[38]

On December 12, 2019, Harris advised Buchanan that his request for accessible housing had been forwarded to the Harris County Sheriff's Office "for investigation" because she was "only authorized to handle complaints dealing with the accessibility of programs, facilities, and services of Harris County[.]"[39]

---

[33]Id.

[34]Plaintiffs' MDS, Docket Entry No. 17, p. 7.

[35]Second Amended Complaint, Docket Entry No. 12, p. 11.

[36]Plaintiff's MDS, Docket Entry No. 17, p. 6.

[37]Second Amended Complaint, Docket Entry No. 12, p. 12.

[38]Id.

[39]Id. at 11.

On December 20, 2019, Laws contacted Buchanan about the grievance that he filed about his housing assignment in D-pod.[40] By this time, Buchanan had been transferred from D-pod to housing unit 3F.[41] According to Buchanan, Laws advised him "with deliberate intent to deceive the plaintiff and deny him equal protection," that Laws had secured Buchanan's move to housing unit 3F, which had all of the accommodations that Buchanan requested, by informing Nurse Hawking that Buchanan needed an immediate transfer.[42] Buchanan reports that, as of March 11, 2020, he has returned to his ADA-compliant cell in housing unit 2H1.[43]

## C.   Buchanan's Claims

Buchanan contends that all of the defendants failed to honor his right to a "reasonable housing accommodation" in violation of Title II of the ADA when he was transferred from housing unit 2H1 to D-pod on November 8, 2019.[44]  Buchanan contends further that his civil rights were violated under 42 U.S.C. § 1983 in connection with his change in housing assignment.[45]  Specifically, Buchanan accuses Nurse Hawking, Officer Gibson, and Sergeant Wheeler of

---

[40]Id. at 12.

[41]Id.

[42]Id.

[43]Plaintiff's MDS, Docket Entry No. 17, p. 7.

[44]Second Amended Complaint, Docket Entry No. 12, pp. 5, 12-15.

[45]Id.

violating his rights under the Fourteenth Amendment in connection with his transfer to D-pod, which did not adequately accommodate his disability.[46]   Buchanan contends that Harris and Laws violated his Fourteenth Amendment right to Equal Protection by failing to investigate the grievances he filed about his change in housing assignment to D-pod.[47]   Buchanan also contends that Sergeant Wheeler violated his rights under the Fourteenth Amendment by threatening to use force when Buchanan resisted his new housing assignment.[48]

In addition, Buchanan accuses Officer Wang of violating his right to Due Process and Equal Protection by failing to provide him with a Confirmation of Service Form on November 8, 2019, regarding the conduct report for a disciplinary rules violation.[49]   Buchanan contends further that Officer Wang improperly retaliated against him for "engaging in protected conduct" by having him transferred from housing unit 2H1 to D-pod.[50]   Buchanan also accuses Officer Pickens-Wilson of retaliation for his alleged role in the transfer.[51]

Buchanan seeks "compensatory damages" from each defendant.[52] In addition, Buchanan seeks injunctive relief against Harris and

---

[46]Id. at 13-15.

[47]Id. at 12, 15.

[48]Id. at 14.

[49]Id. at 13.

[50]Id.

[51]Id.

[52]Id. at 15-17.

-9-

Laws to "enjoin[]" them for failing to investigate his grievances.[53] Buchanan also seeks injunctive relief against Harris, Laws, and Officer Gibson, regarding the transfer that placed Buchanan in housing that failed to accommodate his disability.[54]

## II.  **Standard of Review**

Because Buchanan is a prisoner who proceeds in forma pauperis, the court is required by the PLRA to scrutinize the pleadings and dismiss the action, in whole or in part, if it determines that the complaint is "frivolous, malicious, or fails to state a claim upon which relief may be granted" or "seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A(b); 28 U.S.C. § 1915(e)(2)(B).  "A complaint is frivolous if it lacks an arguable basis in law or fact or if there is no realistic chance of ultimate success."  Henthorn v. Swinson, 955 F.2d 351, 352 (5th Cir. 1992) (per curiam) (citation omitted).

In determining whether the complaint fails to state a claim, courts "us[e] the same standard applicable to dismissals under Federal Rule of Civil Procedure 12(b)(6)."  Rogers v. Boatright, 709 F.3d 403, 407 (5th Cir. 2013) (citation omitted).  Under this standard, "a complaint fails to state a claim upon which relief may be granted when it does not contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on

---

[53] Id.

[54] Id.

its face." Id. (internal quotation marks and citation omitted).
To demonstrate the requisite plausibility, a complaint must be
"based on factual content that allows the court to draw the
reasonable inference that the defendant is liable for the
misconduct alleged." Whitaker v. Collier, 862 F.3d 490, 497 (5th
Cir. 2017) (internal quotation marks and citations omitted).

The court is mindful that pleadings filed by pro se litigants
are subject to a less stringent standard than those drafted by
lawyers. See Haines v. Kerner, 92 S. Ct. 594, 596 (1972) (per
curiam); see also Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007)
("A document filed pro se is 'to be liberally construed[.]'")
(quoting Estelle v. Gamble, 97 S. Ct. 285, 292 (1976)). Even under
this lenient standard, however, "[a] pleading that offers 'labels
and conclusions' or 'a formulaic recitation of the elements of a
cause of action will not do.'" Ashcroft v. Iqbal, 129 S. Ct. 1937,
1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 127 S. Ct.
1955, 1965 (2007)). Likewise, "[t]hreadbare recitals of the
elements of a cause of action, supported by mere conclusory
statements, do not suffice." Iqbal, 129 S. Ct. at 1949 (citation
omitted).

### III.  Discussion

#### A.  Physical Injury Requirement

Buchanan seeks compensatory damages for the mental anguish,
pain, and discomfort that he experienced as a result of his change

-11-

in housing assignment on November 8, 2019.[55]  The PLRA, codified as amended at 42 U.S.C. § 1997e(e), precludes an action for compensatory damages stemming from a prisoner's conditions of confinement "without a prior showing of physical injury[.]"  The Fifth Circuit has held that this restriction "applies to all federal civil actions" filed by prisoners, "making compensatory damages for mental or emotional injuries non-recoverable, absent physical injury." Geiger v. Jowers, 404 F.3d 371, 375 (5th Cir. 2005) (per curiam).  Thus, Buchanan may not recover compensatory damages without a showing that he suffered a physical injury as a result of the defendants' conduct.  See id.; see also Cassidy v. Indiana Dep't of Corrections, 199 F.3d 374, 376-77 (7th Cir. 2000) (holding that § 1997e(e) applies to bar claims for compensatory damages for disability-based discrimination under the ADA without a showing of prior physical injury).

The Fifth Circuit has determined that "the 'physical injury' required by § 1997e(e) 'must be more than de minimus [sic], but need not be significant." Harper v. Showers, 174 F.3d 716, 719 (5th Cir. 1999) (quoting Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997)) (alteration in original).  Buchanan alleges that he experienced "discomfort" while using the toilet without hand-rails after he was assigned to D-pod on November 8, 2019, and that he developed sores on his "residual limb" because he was unable to

---

[55]Id. at 13-17.

shower or clean the liner on his prosthesis for a period of five days.[56]   Because Buchanan does not allege facts showing that he required medical care for these issues, his allegations do not demonstrate an injury that was more than de minimis for purposes of the PLRA.   See Siglar, 112 F.3d at 193 (holding that a bruised ear that was sore for three days was de minimis and insufficient to support a claim for damages); see also Alexander v. Tippah County, Mississippi, 351 F.3d 626, 631 (5th Cir. 2003) (per curiam) (holding that nausea and vomiting that was not severe enough to require medical treatment was insufficient to qualify as a physical injury); Luong v. Hatt, 979 F. Supp. 481, 486 (N.D. Tex. 1997) ("A physical injury is an observable or diagnosable medical condition requiring treatment by a medical care professional.   It is not a sore muscle, an aching back, a scratch, an abrasion, a bruise, etc., which lasts even up to two or three weeks.").   Therefore, Buchanan's claims for compensatory damages is barred by the PLRA.[57]

**B.   Inadequate Housing - Individual Capacity Claims**

Buchanan contends that all of the defendants violated the ADA in connection with his transfer from housing unit 2H1 to D-pod on November 8, 2019, where Buchanan claims that he was denied adequate

---

[56]Second Amended Complaint, Docket Entry No. 12, p. 11; Plaintiff's MDS, Docket Entry No. 17, p. 7.

[57]The physical-injury requirement found in § 1997e(e) does not apply to Buchanan's claims for injunctive relief, which are discussed below.   See Geiger, 404 F.3d at 375.

housing to accommodate his disability.[58] Buchanan contends that several of the defendants (Harris, Nurse Hawking, Sergeant Wheeler, Officer Gibson, and Laws) also violated his rights under the Fourteenth Amendment for purposes of liability under 42 U.S.C. § 1983 by failing to provide him with adequate housing accommodations as a disabled pretrial detainee.[59]

Title II of the ADA provides: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. "Title II [of the ADA] imposes an obligation on public entities to make reasonable accommodations or modifications for disabled persons, including prisoners." Garrett v. Thaler, 560 F. App'x 375, 382 (5th Cir. 2014) (quoting Tennessee v. Lane, 124 S. Ct. 1978, 1993 (2004); Pennsylvania Dep't of Corrections v. Yeskey, 118 S. Ct. 1952, 1956 (1998)); see also United States v. Georgia, 126 S. Ct. 877 (2006). "To succeed on a failure-to-accommodate claim, a plaintiff must prove: (1) he is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered entity; and (3) the entity failed to make reasonable accommodations." Ball v. LeBlanc, 792 F.3d 584, 596 n.9 (5th Cir. 2015) (internal citation omitted).

---

[58]Second Amended Complaint, Docket Entry No. 12, pp. 5, 12-15.

[59]Id. at 12-15.

-14-

Although the ADA authorizes claims against a "public entity,"[60] it does not authorize individual liability.   <u>See Nottingham v. Richardson</u>, 499 F. App'x 368, 376 n.6 (5th Cir. 2012) (citations omitted).   Likewise, a plaintiff "may not bring a 42 U.S.C. § 1983 action for damages against a state official in his individual capacity to vindicate rights conferred by Title II of the ADA." <u>Rivera v. Dawson</u>, No. 05-41565, 2007 WL 1223914, at *1 (5th Cir. 2007) (unpublished) (citing <u>McCarthy ex rel. Travis v. Hawkins</u>, 381 F.3d 407, 412-14 (5th Cir. 2004)); <u>see also Vinson v. Thomas</u>, 288 F.3d 1145, 1156 (9th Cir. 2002) ("[A] plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in her individual capacity to vindicate rights created by Title II of the ADA."); <u>Decker v. Dunbar</u>, 633 F. Supp. 2d 317, 356-57 (E.D. Tex. 2008) (observing that there is no individual liability in lawsuits under the ADA, and that a plaintiff may not attempt to assert such claims by "casting [his] lawsuit under Section 1983") (citations omitted).

Buchanan has therefore not demonstrated that he has a viable cause of action against any of the defendants in their individual capacity for violations of the ADA.   Likewise, Buchanan cannot bring an individual-capacity claim for damages under § 1983 against these defendants based on his housing accommodations.   These claims

---

[60]Buchanan expressly abandoned any claim against the Harris County Sheriff's Office or Harris County when he filed his Second Amended Complaint.  <u>See</u> Plaintiff's MDS, Docket Entry No. 17, p. 2.

will therefore be dismissed as legally frivolous. See Geiger, 404 F.3d at 373 ( "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.") (citations omitted).

## C. Inadequate Housing - Official Capacity Claims

Buchanan contends that Harris, Laws, and Officer Gibson violated the ADA while acting in their official capacity by failing to ensure that he had adequate housing to accommodate his disability when he was transferred from housing unit 2H1 to D-pod on November 8, 2019.[61] To the extent that Buchanan claims that Officer Gibson was responsible for the transfer from an ADA-compliant cell in housing unit 2H1 to D-pod,[62] or that Harris and Laws failed to remedy his housing assignment after he filed a grievance,[63] Buchanan does not allege facts showing that he can prevail.

Buchanan's allegations reflect that after he filed a grievance about his accommodations in D-pod on November 9, 2019,[64] he was provided with a shower chair on November 13, 2019, to assist him while showering until he could be "placed in handicap housing."[65]

---

[61]Second Amended Complaint, Docket Entry No. 12, pp. 4-5.

[62]Id. at 9.

[63]Id. at 12, 15.

[64]Id. at 11.

[65]Id. at 12.

Although Buchanan does not provide an exact date, it is evident from the chronology outlined in his pleadings that he was removed from D-pod shortly thereafter and transferred to housing unit 3F, which had the accommodations that he requested in his grievance, sometime before Laws contacted him about that grievance on December 20, 2019.[66] A county jail is not required to acquiesce to a detainee's choice of accommodations merely because he has requested them. See Cadena v. El Paso County, 946 F.3d 717, 725 (5th Cir. 2020) (citing Wells v. Thaler, 460 F. App'x 303, 313 (5th Cir. 2012) ("[We] accord the officials at [prisons] deference in their determination of an appropriate accommodation.") (alteration in original)); see also Arce v. Louisiana, 226 F. Supp. 3d 643, 651 (E.D. La. 2016) ("The ADA provides for reasonable accommodation, not preferred accommodation. The accommodation of the inmate's disability need not be ideal; instead, it need only be reasonable and effective. Further, a correctional facility is afforded deference in its determination of an appropriate accommodation.") (internal quotation marks and citations omitted)). Because officials responded to his grievances and he was eventually transferred from D-pod, Buchanan has not demonstrated that he was denied reasonable accommodations for his disability after he requested them or that an actionable violation of the ADA occurred. See Baker v. TDCJ-CID, 793 F. App'x 220, 222 (5th Cir. 2019) (per curiam) (citing Ball, 792 F.3d at 596 n.9).

---

[66] Id.

Assuming that his placement in D-pod did pose a violation, Buchanan cannot succeed with his ADA claim, which is limited to injunctive relief. See 42 U.S.C. § 1997e(e) (precluding a prisoner from seeking compensatory damages without a physical injury). Buchanan concedes that since his transfer to D-pod on November 8, 2019, and subsequent reassignment to housing unit 3F, he was returned to his former ADA-compliant cell in housing unit 2H1 on March 11, 2020.[67] As a result, his claims for injunctive relief regarding his housing assignment are moot. See Herman v. Holiday, 238 F.3d 660, 665 (5th Cir. 2001) (noting that plaintiff's transfer to a different prison facility rendered his claims for declaratory and injunctive relief moot); see also Flaming v. Alvin Community College, 777 F. App'x 771, 772 (5th Cir. 2019) (per curiam) (holding that an inmate's ADA claim was properly dismissed as moot "where the cause of action is no longer live") (quoting Henschen v. City of Houston, 959 F.2d 584, 587 (5th Cir. 1992)). For these reasons, Buchanan's claim that he was denied adequate housing by Gibson, Harris, and Laws in their official capacity will be dismissed.

## D.  Failure to Investigate Grievances

Buchanan alleges that Harris and Laws violated his right to Equal Protection by "failing to properly investigate the plaintiff's accessibility grievance as others similarly

---

[67]Plaintiff's MDS, Docket Entry No. 17, p. 7.

situated[.]"[68]    The Equal Protection Clause of the Fourteenth
Amendment requires that "all persons similarly situated should be
treated alike." City of Cleburne, Texas v. Cleburne Living Center,
Inc., 105 S. Ct. 3249, 3254 (1985) (citing Plyler v. Doe, 102
S. Ct. 2382, 2394 (1982)).  To succeed on an equal protection claim
an inmate must demonstrate "'purposeful discrimination resulting in
a discriminatory effect among persons similarly situated.'"
Baranowski v. Hart, 486 F.3d 112, 123 (5th Cir. 2007) (quoting
Adkins v. Kaspar, 393 F.3d 559, 566 (5th Cir. 2004)).  Buchanan's
equal protection claim fails because he does not allege facts
showing that he was actually discriminated against or treated
differently from other similarly situated inmates concerning his
housing assignment or his grievances.

Likewise, Buchanan does not allege facts showing that Harris
or Laws violated his rights in connection with the grievance that
he filed on November 9, 2019, concerning his housing assignment at
the Jail.  Buchanan has not demonstrated that Harris, as an ADA
coordinator employed by Harris County Human Resources and Risk
Management, was authorized to investigate grievances from inmates
about conditions of confinement at the Jail operated by the Harris
County Sheriff's Department.[69]  It also appears from the pleadings
that Laws, as the ADA coordinator at the Jail, investigated
Buchanan's grievance and that Buchanan was reassigned from D-pod to

_____

[68]Second Amended Complaint, Docket Entry No. 12, pp. 12, 15.

[69]Id. at 11.

housing unit 3F after Laws contacted Nurse Hawking, who approved his reassignment.[70]

Even if Harris and Laws failed to investigate as alleged, it is well established that an inmate has no constitutionally protected interest "in having grievances resolved to his satisfaction." Geiger, 404 F.3d at 374; see also Hill v. Walker, 718 F. App'x 243, 250 (5th Cir. 2018) (per curiam) (holding that an inmate's § 1983 claim for failure to investigate grievances is "indisputably meritless") (citation omitted). Accordingly, Buchanan's claims against Harris and Laws for the alleged failure to investigate the grievance he filed about his housing will be dismissed as frivolous.

## E.    Threats of Force by Sergeant Wheeler

Buchanan contends that Sergeant Wheeler violated his constitutional rights by threatening to use force when he resisted his change in housing assignment on November 8, 2019.[71] Buchanan concedes, however, that he accepted his housing assignment in D-pod and that no force was used.[72] The Fifth Circuit has repeatedly held that verbal threats against an inmate by a guard do not amount to a constitutional violation and are not actionable under 42 U.S.C. § 1983. See Calhoun v. Hargrove, 312 F.3d 730, 734 (5th Cir.

---

[70]Id. at 12.

[71]Second Amended Complaint, Docket Entry No. 12, pp. 10, 14.

[72]Id. at 10.

2002); see also Larson v. Westbrook, 799 F. App'x 263, 264 (5th
Cir. 2020) (per curiam) (holding that "verbal threats and
threatening gestures, standing alone, do not amount to a
constitutional violation") (citations omitted). Therefore, this
claim will be dismissed as frivolous.

## F.   Inadequate Notice of Disciplinary Rules Violations

Buchanan claims that Officer Wang violated his right to Due
Process and Equal Protection when she failed to provide him with a
Confirmation of Service Form on November 8, 2019, thereby denying
him notice of an alleged disciplinary rules infraction.[73] Inmates
are entitled to notice and an opportunity to be heard in connection
with disciplinary rules infractions if a liberty interest is at
stake, which includes proceedings initiated by prison officials
that may result in the loss of previously earned good-time credits.
See, e.g., Wolff v. McDonnell, 94 S. Ct. 2963, 2978-79 (1974).
Buchanan does not allege facts showing that due to the alleged
rules violation or any conduct report initiated by Officer Wang on
or about November 8, 2019, he was convicted of a disciplinary
offense that resulted in the loss of good-time credit or punishment
that posed an "atypical and significant hardship" as a result.[74]
Sandin v. Conner, 115 S. Ct. 2293, 2300 (1995). His allegations
are also insufficient to establish discrimination or disparate

---

[73]Id. at 6-7, 13.

[74]Plaintiff's MDS, Docket Entry No. 17, p. 4.

treatment by Officer Wang for purposes of an equal protection violation.  <u>See Baranowski,</u> 486 F.3d at 123.  Absent such a showing, Buchanan cannot establish that Officer Wang violated his rights where the alleged disciplinary rules violation is concerned. Accordingly, his claim of inadequate notice against Officer Wang is frivolous.

## G.   Retaliation

Buchanan contends that Officer Wang retaliated against him by having him transferred to D-pod on November 8, 2019, after Buchanan engaged in "protected conduct."[75] Although Buchanan does not specifically identify this conduct, he appears to refer to the threat he made to file a grievance against Wang for violating his right to due process and equal protection when she failed or refused to provide him with a Confirmation of Service Form for the disciplinary rules violation lodged against him.[76]  Buchanan believes that Officer Pickens-Wilson also participated in the retaliation because Buchanan was transferred from his cell in housing unit 2H1 the same day that he observed Wang place a phone call from the picket, presumably to Officer Pickens-Wilson, while looking in Buchanan's direction and laughing.[77]

---

[75]Second Amended Complaint, Docket Entry No. 12, pp. 7-8, 13.

[76]<u>Id.</u> at 7-8.

[77]<u>Id.</u> at 8, 13.

Because prison officials have "wide latitude in the control and disciplining of inmates," the Fifth Circuit has counseled that claims of retaliation by prisoners "must therefore be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions." <u>Woods v. Smith</u>, 60 F.3d 1161, 1166 (5th Cir. 1995) (internal quotation marks and citation omitted). "To prevail on a claim of retaliation, a prisoner must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." <u>DeMarco v. Davis</u>, 914 F.3d 383, 388 (5th Cir. 2019) (citations and internal quotation marks omitted).

Buchanan does not satisfy the first element by establishing that he was retaliated against for engaging in conduct protected by a specific constitutional right. It is true that "[a] prison official may not retaliate against or harass an inmate for complaining through proper channels about a guard's misconduct." <u>Morris v. Powell</u>, 449 F. 3d 682, 684 (5th Cir. 2006) (citing <u>Woods</u>, 60 F.3d at 1164). However, an inmate may not engage in misconduct while imprisoned and he may not use the grievance process to insulate himself from properly filed disciplinary actions. <u>See Woods</u>, 60 F.3d at 1166. Importantly, an inmate's rights under the First Amendment must be exercised "in a <u>manner</u> consistent with his status as a prisoner." <u>Freeman v. Texas Dep't of Criminal Justice</u>, 369 F.3d 854, 864 (5th Cir. 2004) (emphasis in original).

Therefore, a prisoner's grievances are not protected by the First Amendment if they are frivolous. <u>See Herron v. Harrison,</u> 203 F.3d 410, 415 (6th Cir. 2000); <u>Hasan v. United States Dep't of Labor,</u> 400 F.3d 1001, 1005 (7th Cir. 2005); <u>see also Jones v. Greninger,</u> 188 F.3d 322, 325 (5th Cir. 1999) (observing that a prisoner's right to access the courts does not extend to frivolous claims). As outlined above, Buchanan failed to show that he had a non-frivolous basis to file a grievance against Wang on November 8, 2019, for violating his right to due process or equal protection. Buchanan's threat to file a frivolous grievance against Wang was therefore not protected activity and will not support a retaliation claim. <u>See Brown v. Craven,</u> No. 2:03-CV-0048, 2003 WL 22511356, at *3 (N.D. Tex. Nov. 5, 2003) (holding that a prisoner's threat to file a "clearly frivolous grievance" was insufficient to support a retaliation claim).

Moreover, Buchanan does not allege facts establishing the element of causation for purposes of a retaliation claim. To demonstrate the requisite causation in this context, an inmate must show that "but for the retaliatory motive the complained of incident . . . would not have occurred." <u>McDonald v. Steward,</u> 132 F.3d 225, 231 (5th Cir. 1998). An inmate must allege more than his personal belief that he is the victim of retaliation. <u>See Jones,</u> 188 F.3d at 324-25 (citation omitted). Conclusionary allegations of retaliation are not sufficient to state a claim. <u>See id.</u> "Instead, an inmate 'must produce direct evidence of motivation' or

'allege a chronology of events from which retaliation may plausibly be inferred.'" DeMarco, 914 F.3d at 388 (quoting Woods, 60 F.3d at 1166).

Buchanan cannot show that Officer Wang or Officer Pickens-Wilson caused his transfer because he has emphasized in this case that Officer Gibson was responsible for moving him to D-pod.[78]  As noted previously, Buchanan claims that Officer Gibson told him that he made the "switch" in housing assignments so that he could place a 75-year-old prisoner with glaucoma in special housing.[79]  To the extent that Buchanan blames Gibson for the transfer, he cannot demonstrate that Officer Wang or Officer Pickens-Walker was involved or that, but for retaliation on their part, his transfer would not have occurred.  Accordingly, Buchanan's retaliation claim will be dismissed as frivolous.

### III.  Conclusion and Order

Because Buchanan has not alleged facts showing that he has a valid claim, the court **ORDERS** as follows:

1.  The civil action filed by John Anthony Buchanan is **DISMISSED** with prejudice as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B).

2.  The dismissal will count as a strike for purposes of 28 U.S.C. § 1915(g).

---

[78]Plaintiff's MDS, Docket Entry No. 17, p. 6 ("Detention Officer W. Gibson is responsible for the transfer.").

[79]Second Amended Complaint, Docket Entry No. 12, p. 9.

-25-

The Clerk is directed to provide a copy of this Memorandum Opinion and Order to the plaintiff.  The Clerk will also send a copy to the Three Strikes List at Three_Strikes@txs.uscourts.gov.

SIGNED at Houston, Texas, on this the 1st day of July, 2020.

_____
SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE