United States District Court
Southern District of Texas
**ENTERED**
March 14, 2023
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOHN ANTHONY BUCHANAN, | § | |
| SPN #02981929, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-19-4571 |
| | § | |
| CORONDA HARRIS, et al., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

The plaintiff, John Anthony Buchanan (SPN #02981929), has filed a Second Amended Complaint under 42 U.S.C. § 1983 (Docket Entry No. 12), concerning the conditions of his confinement at the Harris County Jail. Buchanan has supplemented his allegations with Plaintiff's Response to [the] Court's Order for More Definite Statement ("Plaintiff's MDS") (Docket Entry No. 17). The sole remaining claim in this case — which has been remanded by the Fifth Circuit Court of Appeals for further consideration — is Buchanan's allegation that defendants Coronda Harris, William Laws, and William Gibson are liable for compensatory damages in their official capacity as Harris County employees for violating his rights under the Americans With Disabilities Act ("ADA"). See Buchanan v. Harris, No. 20-20408 (Docket Entry No. 60, pp. 5-6).

Now pending is Defendants Coronda Harris, William Laws and William Gibson's Motion for Summary Judgment ("Defendants' MSJ")

(Docket Entry No. 103), which argues that this action is barred by two separate provisions found in the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §§ 1997e(a) and 1997e(e), and that Buchanan's ADA claim is unsupported by evidence. Buchanan has filed Plaintiff's Response to Defendants Coronda Harris, William Laws and William Gibson's Motion for Summary Judgment ("Plaintiff's Response") (Docket Entry No. 129) and Plaintiff's Appendix of Evidence in Support of His Response to the Defendants' Motion for Summary Judgment ("Appendix in Support of Plaintiff's Response") (Docket Entry No. 130). The defendants have replied with Defendants' Motion to Strike Plaintiff's Response Due to Non-compliance With Court Rules, Motion to Strike Exhibits and Reply in Support of Their Motion for Summary Judgment ("Defendants' Reply") (Docket Entry No. 131). After considering all of the pleadings under the applicable legal standard, the court will grant Defendants' MSJ and dismiss this case for the reasons explained below.

## I. Background and Procedural History

Throughout this lawsuit Buchanan has been in custody at the Harris County Jail (the "Jail"), which is operated by the Harris County Sheriff's Office ("HCSO"), for aggravated assault charges that remain pending against him in state court.[1] Buchanan,

---

[1]Second Amended Complaint, Docket Entry No. 12, p. 3 ¶ 1. For purposes of identification, all page numbers refer to the pagination imprinted by the court's Electronic Case Filing ("ECF") system.

whose right leg was amputated below the knee before he was admitted
to the Jail,[2] describes himself as a "transtibial, disabled,
pretrial detainee."[3]  As a result of his disability Buchanan uses
a prosthetic limb and a walker to ambulate.[4]

Buchanan was admitted to the Jail on January 21, 2019.[5]  From
January 26, 2019, to November 8, 2019, Buchanan was primarily
assigned to housing unit 2H1, which has "toilets with hand rails"
as well as "showers with seats and hand rails" that accommodated
his disability.[6]  On November 8, 2019, officials at the Jail
transferred Buchanan from housing unit 2H1, which Buchanan
describes as an "ADA compliant handicap housing unit," to a general
population cell in "D-pod."[7]  Buchanan explains that he was removed
from housing unit 2H1 after he "received a conduct report" for
violating disciplinary rules.[8]

---

[2]Plaintiff's MDS, Docket Entry No. 17, p. 5 (Response to
Question 10(a)); Declaration of John Anthony Buchanan ("Buchanan
Declaration"), Exhibit 1 of Appendix in Support of Plaintiff's
Response, Docket Entry No. 130, p. 5 ¶ 4, p. 6 ¶ 7 (describing the
injury).

[3]Second Amended Complaint, Docket Entry No. 12, p. 3 ¶ 1.

[4]Plaintiff's MDS, Docket Entry No. 17, p. 6 (Response to
Question 10(d)).

[5]Buchanan Declaration, Exhibit 1 of Appendix in Support of
Plaintiff's Response, Docket Entry No. 130, p. 6 ¶ 9.

[6]Plaintiff's MDS, Docket Entry No. 17, p. 7 (Response to
Question 11(g)).

[7]Second Amended Complaint, Docket Entry No. 12, p. 6 ¶ 13.

[8]Id. ¶ 14.

On his way to D-pod Buchanan complained about the transfer to
Detention Officer William Gibson, who reportedly advised Buchanan
to speak with a supervisor.[9]  At that time Gibson was assigned to
the HCSO Classification Division.[10]   Gibson explains that all
housing assignments involving disabled inmates are made under the
direction of HCSO Medical Services.[11]   Other than reviewing
paperwork authorized by Medical Services personnel, Gibson had no
other role in Buchanan's transfer.[12]  In support, Gibson presents
paperwork showing that Buchanan's transfer to D-pod was authorized
by two medical providers.[13]

After he spoke with Gibson, Buchanan contacted the D-pod
supervisor, Sergeant Wheeler, who told Buchanan that there was
nothing he could do and that the housing assignment was "out of
[Wheeler's] control."[14]   Wheeler advised Buchanan that he would
speak "to Classification" about the assignment, but that Buchanan

---

[9]Id. at 9 ¶ 29.

[10]Declaration of William Gibson ("Gibson Declaration"),
Exhibit K of Appendix of Evidence in Support of Defendants Coronda
Harris, William Laws and William Gibson's Motion for Summary
Judgment ("Appendix to Defendants' MSJ"), Docket Entry No. 103-1,
p. 54 ¶ 2.

[11]See id.

[12]See id. at 55 ¶ 4.

[13]See Inmate Transfer Tracking Sheet, Exhibit A to Gibson
Declaration (Exhibit K of Appendix to Defendants' MSJ), Docket
Entry No. 103-1, p. 57.

[14]Second Amended Complaint, Docket Entry No. 12, p. 10 ¶ 30.

would "need to do the paperwork" if there was no change.[15]  Shortly thereafter, Wheeler provided Buchanan with "an inmate grievance form."[16]

When Buchanan arrived at D-pod he was placed in housing unit 2D4.[17]  Buchanan observed that there were "no toilets with rails, no handicap sinks, no shower with a seat or hand rails, or other amenities," which Buchanan previously had access to in housing unit 2H1.[18]  The following day, on November 9, 2019, Buchanan sent a letter that contained "a reasonable accommodation request combined with an accessibility grievance" to the "ADA Coordinator" for "Harris County Human Resources and Risk Management," who at that time was Coronda Harris.[19]  On that same date, Buchanan filed a grievance with "the inmate services division" at the Jail.[20]

William Laws, who serves as the HCSO ADA Compliance Coordinator, asked Medical Services to conduct a "special needs assessment" after he became aware of Buchanan's change in housing assignment on November 11, 2019.[21]  On November 13, 2019, Buchanan

---

[15]Id. ¶ 32.

[16]Id. ¶ 33.

[17]Inmate Housing History Report, Exhibit C of Appendix to Defendants' MSJ, Docket Entry No. 103-1, p. 8.

[18]Second Amended Complaint, Docket Entry No. 12, pp. 10-11 ¶ 34.

[19]Id. at 11 ¶ 37.

[20]Plaintiff's MDS, Docket Entry No. 17, p. 6 (Response to Question 11(e)).

[21]Declaration of William Laws ("Laws Declaration"), Exhibit J of Appendix to Defendants' MSJ, Docket Entry No. 103-1, p. 51 ¶¶ 3-4.

was given a "flimsy chair" to sit on while in the shower.[22]  The shower chair came with a "Harris County Sheriff's Office special needs advisement dated November 12, 2019," notifying the "watch commander" that Buchanan was allowed to use the chair in the shower until he could be "placed in handicap housing."[23]

Buchanan remained in D-pod until November 27, 2019, when he received another conduct report for resisting restraints and was transferred to housing unit 7C2.[24]  On December 10, 2019, Buchanan was transferred to housing unit 3A1 after receiving three additional conduct reports for:  (1) using abusive or obscene language; (2) refusing to obey an order; and (3) assault on staff.[25] After Buchanan refused to be assigned to housing unit 3A1 because it did not accommodate his disability, he was placed in a separation cell and then escorted to the infirmary where he was seen by "Dr. Kelvin Sheppard."[26]  During that visit Buchanan requested placement in handicap housing, and Dr. Sheppard agreed to issue an order for a housing assignment that would accommodate his needs.[27]

---

[22]Second Amended Complaint, Docket Entry No. 12, p. 12 ¶ 40.

[23]Id.

[24]Buchanan Declaration, Exhibit 1 of Appendix in Support of Plaintiff's Response, Docket Entry No. 130, pp. 28-29 ¶¶ 149, 153.

[25]Id. at 32 ¶¶ 176, 180.

[26]Id. at 34-35 ¶¶ 192, 196-98.

[27]Id. at 35 ¶¶ 199-200, 203.

On December 12, 2019, Harris replied to Buchanan's letter by advising him that his request for accessible housing had been forwarded to Jail officials with the HCSO "for investigation" because she was "only authorized to handle complaints dealing with the accessibility of programs, facilities, and services of Harris County[.]"[28] Laws received the correspondence from Harris on December 18, 2019.[29] Shortly thereafter, Laws contacted Buchanan about the grievance that he filed about his housing assignment in D-pod.[30] By this time Buchanan had been transferred to housing unit 3F1,[31] which Buchanan describes as ADA compliant handicap housing.[32]

Buchanan filed this suit by executing his initial Complaint against several detention officers and officials on November 13, 2019, raising an assortment of claims about his transfer to D-pod on November 8, 2019, including allegations of retaliation, violations of the First and Fourteenth Amendments and the ADA.[33] Buchanan executed an Amended Complaint on November 27, 2019,[34] and on February 27, 2020, the court granted him leave to file a Second

---

[28]Second Amended Complaint, Docket Entry No. 12, p. 11 ¶ 38.

[29]Laws Declaration, Exhibit J of Appendix to Defendants' MSJ, Docket Entry No. 103-1, p. 52 ¶ 4.

[30]Second Amended Complaint, Docket Entry No. 12, p. 12 ¶ 39.

[31]Id.

[32]Buchanan Declaration, Exhibit 1 of Appendix in Support of Plaintiff's Response, Docket Entry No. 130, p. 39 ¶¶ 235-36.

[33]Complaint, Docket Entry No. 1, pp. 2, 10.

[34]Amended Complaint, Docket Entry No. 6, p. 14.

Amended Complaint.[35]  Buchanan alleged that as a result of being temporarily confined in D-pod, he suffered "discomfort" when using the toilet and that he developed "sores on [the] residual limb" of his amputated leg because he was unable to access the shower or clean his "prosthetic liner[],"[36] which is the "rubber sleeve" attached to his prosthesis.[37]  Buchanan argued that the defendants denied him due process, equal protection, and acted with deliberate indifference in violation of the Fourteenth Amendment and Title II of the ADA.[38]  He also alleged that his transfer to D-pod was retaliatory and violated the First and Fourteenth Amendments.[39]  He requested injunctive relief and compensatory damages from several detention officers and other Jail officials.[40]

After considering all of the pleadings, the court dismissed the case as frivolous under 28 U.S.C. § 1915(e)(2)(B).[41]  The Fifth Circuit affirmed that decision, in part, but concluded that Buchanan plausibly alleged a "failure to accommodate" his disability when he was transferred from housing unit 2H1 on

---

[35]Order, Docket Entry No. 11, p. 1; Second Amended Complaint, Docket Entry No. 12.

[36]Second Amended Complaint, Docket Entry No. 12, p. 11 ¶¶ 35-36.

[37]Plaintiffs' MDS, Docket Entry No. 17, p. 7 (Response to Question 11(g)).

[38]Second Amended Complaint, Docket Entry No. 12, pp. 12-15 ¶¶ 1-12.

[39]Id. at 13 ¶¶ 3-6.

[40]Id. at 15-17.

[41]Memorandum Opinion and Order, Docket Entry No. 21, p. 25.

-8-

November 8, 2019, and remanded Buchanan's claim for compensatory damages under Title II of the ADA "against the defendants in their official capacity."[42]   The only defendants who Buchanan sued in their official capacity are:  (1) Coronda Harris, (2) William Laws, and (3) Detention Officer Gibson.[43]   These defendants now move for summary judgment, arguing that (1) Buchanan failed to comply with the PLRA, 42 U.S.C. § 1997e(a), by not exhausting the administrative grievance process as required before filing this suit; (2) his claims for compensatory damages are barred by the PLRA, 42 U.S.C. § 1997e(e), because there is no evidence showing that he suffered a physical injury that was more than de minimis as a result of his change in housing assignment; and (3) his ADA claim is without merit because there is no evidence that the defendants intentionally discriminated against him by failing to reasonably accommodate his disability.[44]

---

[42]Buchanan v. Harris, No. 20-20408, Docket Entry No. 60, p. 6. The defendants note that Buchanan raises numerous unrelated issues, and they have moved to strike most of his lengthy response to the summary judgment motion — including several handwritten declarations that he has presented as exhibits.   See Defendants' Reply, Docket Entry No. 131, pp. 1-3.   To the extent that Buchanan attempts to raise additional claims that are outside the mandate on remand, those claims will not be considered.   See General Universal Systems, Inc. v. HAL, Inc., 500 F.3d 444, 453 (5th Cir. 2007) ("The mandate rule requires a district court on remand to effect our mandate and to do nothing else.") (citation omitted).   Because the court declines to consider claims other than the one remanded by the Fifth Circuit, the defendants' motion to strike (Docket Entry No. 131) will be denied as moot.

[43]See Second Amended Complaint, Docket Entry No. 12, pp. 4-5 ¶¶ 2, 6, 7.

[44]Defendants' MSJ, Docket Entry No. 103, pp. 16-28.

## II.  __Standard of Review__

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure.  Under this rule a reviewing court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a) (2021); see also Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986).  A fact is "material" if its resolution in favor of one party might affect the outcome of the suit under governing law.  Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2510 (1986).  An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party.  Id.

In deciding a summary judgment motion, the reviewing court must view all facts and inferences in the light most favorable to the nonmovant and resolve all factual disputes in his favor.  See Shah v. VHS San Antonio Partners, L.L.C., 985 F.3d 450, 453 (5th Cir. 2021).  If the movant demonstrates an "'absence of evidentiary support in the record for the nonmovant's case,'" the burden shifts to the nonmovant to "come forward with specific facts showing that there is a genuine issue for trial."  Sanchez v. Young County, Texas, 866 F.3d 274, 279 (5th Cir. 2017) (quoting Cuadra v. Houston Indep. Sch. Dist., 626 F.3d 808, 812 (5th Cir. 2010)).  The nonmovant cannot avoid summary judgment by resting on his pleadings or presenting "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic

-10-

argumentation." Jones v. Lowndes County, Mississippi, 678 F.3d 344, 348 (5th Cir. 2012) (internal citation and quotation marks omitted); see also Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (a nonmovant cannot demonstrate a genuine issue of material fact with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence).

The plaintiff represents himself in this case. Courts are required to give a pro se litigant's contentions a liberal construction. See Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007) (per curiam) (citation omitted). Nevertheless, a pro se litigant is not excused from meeting his burden of proof of specifically referring to evidence in the summary judgment record and setting forth facts showing that there is a genuine issue of material fact remaining for trial. See Outley v. Luke & Associates, Inc., 840 F.3d 212, 217 (5th Cir. 2016).

### III. Discussion

A. Exhaustion of Administrative Remedies

The defendants argue that Buchanan failed to properly exhaust administrative remedies before filing suit, which is an affirmative defense to a civil action involving prison conditions.[45] See Jones v. Bock, 127 S. Ct. 910, 921 (2007) ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in

---

[45]Defendants' MSJ, Docket Entry No. 103, pp. 16-18.

their complaints."); <u>Herschberger v. Lumpkin,</u> 843 F. App'x 587, 590 (5th Cir. 2021) (noting that "the failure to exhaust administrative remedies is an affirmative defense and must generally be pled by defendants in order to serve as the basis for dismissal") (citations omitted).  This case is governed by the PLRA, 42 U.S.C. § 1997e(a), which requires exhaustion before suit is filed:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).  Because this requirement is mandatory, Buchanan was required to exhaust administrative remedies before filing this lawsuit about the conditions of his confinement.  <u>See Woodford v. Ngo,</u> 126 S. Ct. 2378, 2382-83 (2006) (citing <u>Porter v. Nussle,</u> 122 S. Ct. 983, 988 (2002); <u>Booth v. Churner,</u> 121 S. Ct. 1819, 1825 (2001)); <u>see also Jones,</u> 127 S. Ct. 918-19 (confirming that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court").

The Harris County Jail has a formal grievance process, which is described in the Inmate Handbook given to every detainee.[46]  An inmate may file a written grievance for a civil rights violation if the issue is not resolved through informal means.[47]  Once an inmate submits a written grievance to Jail officials, he will receive an

_____

[46]Harris County Sheriff's Office Inmate Handbook, Exhibit G of Appendix to Defendants' MSJ, Docket Entry No. 103-1, pp. 69-70.

[47]<u>Id.</u> at 70.

interim response within 15 days of receipt.[48]   After an investigation by a supervisor who was not involved in the incident that forms the basis of the grievance, the inmate will receive a copy of the investigator's decision.[49]   Any grievance that is determined to be "Unfounded" or "Founded/Resolved" may be appealed by writing to the Grievance Board within five working days of the investigator's decision.[50] All "Founded/Unresolved" grievances are automatically appealed to the Grievance Board, whose decision is final in all instances.[51] The Grievance Board will hold a hearing on the matter unless doing so would present "a hazard to institutional safety and/or correctional goals."[52]

The incident that forms the basis of this lawsuit took place on November 8, 2019, when Buchanan was transferred from housing unit 2H1 to D-pod for reasons related to his conduct.[53]   Buchanan claims that as the result of this transfer he was housed in conditions that did not accommodate his disability as an amputee and that he was unable to shower or clean himself properly, which

---

[48] Id.

[49] Id.

[50] Id.

[51] Id.

[52] Id.

[53] Second Amended Complaint, Docket Entry No. 12, p. 6 ¶¶ 13-14, p. 9 ¶¶ 26-27.

caused him to develop sores on his amputated limb.[54]  The record shows that on November 9, 2019, Buchanan executed two grievances that relate to this transfer.  Those grievances, No. 74180 and No. 30622, are examined below.[55]

### 1.   Grievance No. 74180

On November 9, 2019, Buchanan executed an Inmate Complaint Form objecting to his transfer to D-pod for disciplinary reasons.[56] Noting that he was an amputee, but without mentioning any harm as a result of the conditions in D-pod or his need for particular accommodations, Buchanan asked to be reassigned to housing unit 2H1.[57]  That grievance was received by a supervisory official at the Jail identified as Sergeant Pickens-Wilson.[58]

On November 11, 2019, Laws reviewed this grievance and asked Medical Services to evaluate Buchanan for a "special needs assessment," suggesting that he be transferred back to "handicap

---

[54]Id. at 11 ¶¶ 35-36.

[55]The court considers the grievances in the order that they were addressed by the defendants.  The grievance numbers appear to be out of sequence because Grievance No. 74180 was assigned at the Jail when it was received through the inmate grievance system. Grievance No. 30622 appears to have been assigned for tracking purposes by Harris County Human Resources and Risk Management when Buchanan's handwritten letter was received by Coronda Harris.

[56]Inmate Complaint Form [Grievance No. 74180], Exhibit L of Appendix to Defendants' MSJ, Docket Entry No. 103-1, pp. 59-60.

[57]Id.

[58]Id. at 59.

-14-

housing."[59]   Laws explains that only Medical Services had authority
to assign or remove a disabled inmate from a handicap housing
unit.[60] On November 13, 2019, Buchanan was given a chair for him to
sit on in the shower while housed in D-pod until he could return to
handicap housing.[61]

### 2.   Grievance No. 30622

On November 9, 2019, Buchanan executed a handwritten letter
entitled "ADA Accessibility Grievance" about the inadequate
conditions of his confinement in D-pod.[62]  Buchanan explained that
he was an amputee and requested access to a housing unit with the
following accommodations:  (1) a shower with railings and a seat;
(2) a toilet with rails to help him sit down and get up during
defecation; (3) a bottom bunk; and (4) ADA compliant sinks.[63]
Buchanan did not place his letter in a grievance box or send it in
the mail to officials at the Jail.  Instead, he mailed it to the
Harris County Human Resources and Risk Management ("HRRM") office.[64]

---

[59]Laws Declaration, Exhibit J of Appendix to Defendants' MSJ,
Docket Entry No. 103-1, p. 51 ¶ 4.

[60]Id. at 51.

[61]Second Amended Complaint, Docket Entry No. 12, p. 12 ¶ 40.

[62]Letter dated Nov. 9. 2019 [Grievance No. 30622], Exhibit D
of Appendix to Defendants' MSJ, Docket Entry No. 103-1, pp. 14-16.

[63]Id. at 14-15.

[64]Id. at 14.

Coronda Harris received Buchanan's handwritten letter on November 27, 2019.[65]   As an ADA Coordinator with HRRM, Harris estimated that about 20% of her workload involved the Jail operated by HCSO, but she emphasized that her role did not include authority to investigate inmate grievances.[66]   Instead, her role was to enter grievances into an HRRM database for tracking purposes and then forward the grievances to HCSO for investigation.[67]   Harris replied to Buchanan with a letter dated December 12, 2019, explaining that she lacked authority to investigate and that the ADA issues raised by him were forwarded to the Jail for review by HCSO personnel.[68]

Laws received correspondence from Harris on December 18, 2019, which contained the handwritten letter that Buchanan sent to HRRM on November 9, 2019.[69]   According to Laws, Buchanan failed to comply with procedures in the Inmate Handbook by submitting his grievance to an ADA Coordinator with HRRM.[70]   After he received the correspondence from Harris about Buchanan's letter, Laws

---

[65]Declaration of Coronda Harris ("Harris Declaration"), Exhibit I of Appendix to Defendants' MSJ, Docket Entry No. 103-1 p. 47 ¶ 4.

[66]Id. at 46 ¶¶ 2-3.

[67]Id. at 46 ¶ 3.

[68]Id. at 47 ¶ 4; Letter to Buchanan dated December 12, 2019, Exhibit A to Harris Declaration (Exhibit I of Appendix to Defendants' MSJ), Docket Entry No. 103-1 at 49.

[69]Laws Declaration, Exhibit J of Appendix to Defendants' MSJ, Docket Entry No. 103-1, p. 52 ¶ 4.

[70]Id.

investigated by contacting Medical Services at the Jail as he had with Buchanan's other grievance.[71]  Laws, who asked Medical Services to consider returning Buchanan to a housing unit that would accommodate his disabilities, learned that Buchanan had been transferred to housing unit 3F1.[72]  After Laws confirmed that housing unit 3F1 was adequate to accommodate Buchanan's needs, Laws "closed out his grievance and submitted [his] findings to [his] chain of command."[73]

On December 20, 2019, Laws provided Buchanan with a receipt that contained details of his investigation and determined that his grievance was "Founded/Resolved."[74]  On December 23, 2019, Buchanan submitted an appeal to the Grievance Board, disputing the determination made by Laws and arguing that the issue was not resolved.[75]  The Grievance Board considered the matter and determined that Buchanan's appeal was "Unfounded" on December 30, 2019.[76]

The defendants note that neither grievance submitted by Buchanan mentioned discomfort, sores, or any other harm caused by

---

[71]Id. at 52 ¶ 5.

[72]Id.

[73]Id. at 52 ¶ 6.

[74]Grievance Resolution Form, Grievance No. 30622, Exhibit E of Appendix to Defendants' MSJ, Docket Entry No. 103-1, p. 27.

[75]Inmate Request Form, Exhibit E of Appendix to Defendants' MSJ, Docket Entry No. 103-1, p. 26.

[76]Grievance Resolution Form, Grievance Appeal No. 30733 to Original Grievance No. 30622, Exhibit E of Appendix to Defendants' MSJ, Docket Entry No. 103-1, p. 25.

the conditions of his confinement.[77]   Because Buchanan made no
mention of any alleged injury until he filed his Amended
Complaint,[78] the defendants argue that Buchanan's failure to exhaust
deprived Harris County officials of the opportunity to investigate
his claim and address the problem before he filed this lawsuit.[79]

"Beyond doubt, Congress enacted § 1997e(a) to reduce the
quantity and improve the quality of prisoner suits; to this
purpose, Congress afforded corrections officials time and
opportunity to address complaints internally before allowing the
initiation of a federal case." Porter, 122 S. Ct. at 988.
Allowing internal review may, in some instances, "improve prison
administration and satisfy the inmate, thereby obviating the need
for litigation." Id.   "[F]or cases ultimately brought to court,
adjudication could be facilitated by an administrative record that
clarifies the contours of the controversy." Id.   A grievance is
considered sufficient to satisfy the exhaustion requirement if it
gives officials "fair notice" and a "fair opportunity to address
the problem that will later form the basis of the lawsuit."
Johnson v. Johnson, 385 F.3d 503, 516, 517 (5th Cir. 2004).
Grievances need not allege "a full-fledged legal theory," but a
prisoner must provide enough facts to "alert prison officials to a
problem and give them an opportunity to address it." Id. at 518.

---

[77]Defendants' MSJ, Docket Entry No. 103, pp. 18-19.

[78]Amended Complaint, Docket Entry No. 6, p. 12 ¶ 50.

[79]Defendants' MSJ, Docket Entry No. 103, pp. 17-18 ¶ 26.

The grievances submitted by Buchanan on November 9, 2019, make no mention of any injury or medical issue associated with his removal from housing unit 2H1 and were submitted only four days before Buchanan executed his original Complaint on November 13, 2019, which was well before he completed the administrative remedy process at the Jail.[80]   Based on this record Buchanan did not provide officials with adequate notice of his claims or complete the grievance process at the Jail before executing his initial Complaint in this case and mailing it to the court on November 13, 2019.[81]   Therefore, Buchanan failed to satisfy the exhaustion requirement, which demands compliance with agency procedural rules. See Woodford, 126 S. Ct. at 2386.   A prisoner must pursue a grievance through all of the steps to satisfy the exhaustion requirement.   See Johnson, 385 F.3d at 515.   Substantial compliance with this process is not enough to exhaust remedies under the PLRA. See Dillon v. Rogers, 596 F.3d 260, 268 (5th Cir. 2010) ("Under our strict approach, we have found that mere 'substantial compliance' with administrative remedy procedures does not satisfy exhaustion . . .").

Buchanan does not dispute that he filed this lawsuit without first providing officials with pertinent facts about his claims or

---

[80]Letter dated Nov. 9, 2019 [Grievance No. 30622], Exhibit D of Appendix to Defendants' MSJ, Docket Entry No. 103-1, pp. 14-16; Inmate Complaint Form [Grievance No. 74180], Exhibit L of Appendix to Defendants' MSJ, Docket Entry No. 103-1, pp. 59-60.

[81]Complaint, Docket Entry No. 1, p. 10.

completing the grievance process at the Jail.  Buchanan argues that the defendants are not entitled to assert lack of exhaustion as an affirmative defense because it has been waived.[82]   Failure to exhaust is an affirmative defense belonging to the defendants that may be waived if not asserted.  See Carbe v. Lappin, 492 F.3d 325, 328 (5th Cir. 2007).  The defendants in this case did not plead failure to exhaust as an affirmative defense in their answers.[83] Instead, they have asserted the affirmative defense by raising this issue in their summary judgment motion.[84]

Rule 8(c) of the Federal Rules of Civil Procedure requires affirmative defenses to be set forth in a responsive pleading.  See Fed. R. Civ. P. 8(c).  Although failure to raise an affirmative defense in compliance with Rule 8(c) "generally results in a waiver," the defendant's failure to comply "is not fatal" where the defense "is raised in the trial court in a manner that does not result in unfair surprise [to the plaintiff]."  Giles v. General Electric Co., 245 F.3d 474, 491-92 (5th Cir. 2001) (citation and internal quotation marks omitted).  Even if a defense was not

---

[82]Plaintiff's Response, Docket Entry No. 129, pp. 97-98.

[83]See Defendant William Laws' Answer to Plaintiff's Second Amended Complaint and More Definite Statement, Docket Entry No. 66, pp. 7-8; Defendant Coronda Harris' Answer to Plaintiff's Second Amended Complaint and More Definite Statement, Docket Entry No. 67, pp. 7-8; Defendant William Gibson's Answer to Plaintiff's Second Amended Complaint and More Definite Statement ("Gibson's Answer"), Docket Entry No. 92, pp. 6-8.

[84]Defendants' MSJ, Docket Entry No. 103, pp. 16-18.

asserted in the answer to a complaint "a defendant does not waive an affirmative defense if he 'raised the issue at a pragmatically sufficient time, and [the plaintiff] was not prejudiced in its ability to respond.'"  Id. at 492 (quoting Allied Chem. Corp. v. Mackay, 695 F.2d 854, 855-56 (5th Cir. 1983)) (alteration in original); see also Arismendez v. Nightingale Home Health Care, Inc., 493 F.3d 602, 610 (5th Cir. 2007) (stating that noncompliance with Rule 8(c) can be excused if the defendant raises the issue at a "pragmatically sufficient time" and there is no prejudice to the plaintiff).

The defendants, who filed separate answers in this case after each one was served, raised the affirmative defense of failure to exhaust in their summary judgment motion that was filed within three months of the last answer that was filed.[85]  There is no trial setting, and this is not a case in which the defendants have waited until the last minute to assert a defense.  Because the affirmative defense was raised in a reasonably prompt manner once all of the defendants had answered, Buchanan does not show that they failed to raise the defense at a pragmatically sufficient time.  See Giles, 245 F.3d at 492; Arismendez, 493 F.3d at 610.

Likewise, Buchanan does not allege facts showing that he has been unable to respond to the summary judgment motion or that he

---

[85]See Gibson's Answer, Docket Entry No. 92, filed on March 23, 2022; and Defendants' MSJ, Docket Entry No. 103, filed on June 27, 2022.

has been prejudiced as the result of any delay in asserting an affirmative defense based on failure to exhaust. Buchanan has had access to his grievance records and other discovery provided by the defendants through disclosures over a year ago on January 21, 2022, as well as records attached to their MSJ filed on June 22, 2022.[86] The court granted Buchanan a lengthy extension of time and a continuance to conduct discovery after the summary judgment motion was filed on June 27, 2022.[87] Buchanan referenced the affirmative defense when he objected to the defendants' summary judgment evidence on September 15, 2022.[88] He raised similar arguments in a letter dated January 2, 2023, which he filed with the Clerk's Office regarding the defendants' contention that this suit is barred by the exhaustion requirement found in the PLRA.[89] Thereafter, he submitted a lengthy response to the summary judgment motion on February 21, 2023.[90] He had ample time to respond. Under these circumstances, the defendants did not waive exhaustion as an

---

[86]See Defendants' Objection and Response to Plaintiff's Motion to Stay Proceedings, Docket Entry No. 122, pp. 3-4 (observing that Buchanan received a box of voluminous documents pertaining to this case through the disclosure process).

[87]See Order Granting Extension of Time, dated August 22, 2022, Docket Entry No. 109 (granting Buchanan's request for a continuance under Fed. R. Civ. P. 56(d) until December 27, 2022).

[88]See Plaintiff's Objections to the Appendix of Evidence in Support of Defendants' Coronda Harris, William Laws, and William Gibbons Motion for Summary Judgment, Docket Entry No. 110, pp. 35-36.

[89]See Letter dated January 2, 2023, Docket Entry No. 125, p. 2.

[90]See Plaintiff's Response, Docket Entry No. 129, pp. 1-122.

affirmative defense. <u>See Johnson,</u> 385 F.3d at 516 n.7; <u>see also</u>
<u>Austin v. Ward,</u> 92 F. App'x 80, 82 (5th Cir. 2004) (per curiam)
(finding that waiver did not apply on summary judgment because the
plaintiff's failure to exhaust administrative remedies "was raised
at a pragmatically sufficient time and [the plaintiff] was not
prejudiced by the defendants' failure to raise the issue earlier")
(citing <u>Lafreniere Park Foundation v. Broussard,</u> 221 F.3d 804, 808
(5th Cir. 2000)); <u>Coker v. Dallas County Jail,</u> Civil Action
No. 3:05-CV-005-M (BH), 2009 WL 1953038, at *14 (N.D. Tex. Feb. 25,
2009) (excusing the defendant's failure to plead exhaustion as an
affirmative defense where the defense was raised at a pragmatically
sufficient time in a summary judgment motion and the plaintiff had
an opportunity to respond) (citing <u>Arismendez,</u> 493 F.3d at 610).

Buchanan argues further that he was not required to file a
grievance about the transfer that occurred on November 8, 2019, or
the conditions of confinement in D-pod because he had filed many
other grievances regarding his accommodations at the Jail.[91] "Where
[a] prisoner's complaint addresses an ongoing problem or multiple
instances of the same type of harm, [the prisoner] need not file a
new grievance in each instance to qualify for exhaustion."
<u>Moussazadeh v. Texas Department of Criminal Justice,</u> 703 F.3d 781,
788 (5th Cir. 2012). Buchanan's pleadings do not take issue with
multiple instances of the same harm or assert that there was an

---

[91]<u>Id.</u> at 101-02.

ongoing problem.  Instead, Buchanan has challenged a single housing transfer that occurred on November 8, 2019, which he claimed was retaliatory and in violation of his right to due process and equal protection as well as his rights under the ADA.[92]  Buchanan provides no chronology showing when his previous grievances were filed and no facts demonstrating that the issues he raised in those grievances were the same as those raised in connection with his transfer to D-pod on November 8, 2019.  Cf. Johnson, 385 F.3d at 521 (concluding that an inmate need not file repetitive grievances about the same issue).  Therefore, Buchanan does not show that any previous grievances filed by him were sufficient to satisfy the exhaustion requirement for his pending claims.

Because the record confirms that Buchanan filed his initial Complaint before he exhausted available administrative remedies at the Jail, he failed to comply with the exhaustion requirement found in the PLRA, 42 U.S.C. § 1997e(a), which mandates exhaustion before suit is filed.  Although administrative review was completed after he filed his Complaint, the Fifth Circuit has held that it is "irrelevant" whether exhaustion is achieved while a prisoner's lawsuit is pending because "[p]re-filing exhaustion is mandatory." Gonzalez v. Seal, 702 F.3d 785, 788 (5th Cir. 2012).  The Fifth Circuit has further emphasized that "[d]istrict courts have no discretion to excuse a prisoner's failure to properly exhaust the

---

[92]Second Amended Complaint, Docket Entry No. 12, pp. 6-12 ¶¶ 13-40.

prison grievance process before filing their complaint." Id. Therefore, a case "must be dismissed if available administrative remedies were not exhausted." Id.; see also Ross v. Blake, 136 S. Ct. 1850, 1856-57 (2016) (holding that a district court may not excuse a prisoner's failure to exhaust available administrative remedies before filing suit even to take "special circumstances" into account). Accordingly, the court will grant Defendants' MSJ on this issue.

Because Buchanan's claims fail for additional reasons, the court will not address the defendants' remaining arguments.

## B.   Buchanan's Claim for Compensatory Damages Under the ADA

As noted previously, the sole remaining issue in this case is Buchanan's claim for compensatory damages from the defendants in their official capacity as Harris County employees for violating his rights under the ADA.[93]  The defendants argue that the PLRA, 42 U.S.C. § 1997e(e), bars Buchanan's claim for monetary damages because there is no evidence showing that he suffered a physical injury that was more than de minimis as a result of his transfer from housing unit 2H1 on November 8, 2019.[94]  The defendants, who note further that none of them were involved in the decision to transfer Buchanan, argue further that Buchanan cannot prevail on

---

[93]Buchanan v. Harris, No. 20-20408 (5th Cir. Oct. 1, 2021), Docket Entry No. 60, pp. 5-6.

[94]Defendants' MSJ, Docket Entry No. 103, pp. 18-19 ¶ 29.

his claims under the ADA because he does not demonstrate that he was intentionally denied a reasonable accommodation.[95]

### 1.  Physical Injury Requirement

The PLRA precludes an action for compensatory damages stemming from a prisoner's conditions of confinement "without a prior showing of physical injury[.]"  42 U.S.C. § 1997e(e).  The Fifth Circuit has determined that "the 'physical injury' required by § 1997e(e) 'must be more than <u>de minimus</u> [sic], but need not be significant.'"  <u>Harper v. Showers</u>, 174 F.3d 716, 719 (5th Cir. 1999) (quoting <u>Siglar v. Hightower</u>, 112 F.3d 191, 193 (5th Cir. 1997)) (alteration in original); <u>see also Flaming v. Alvin Community College,</u> 777 F. App'x 771, 772 (5th Cir. 2019) (per curiam) (stating that the district court properly dismissed a prisoner's ADA claim for compensatory damages absent proof of a physical injury) (citations omitted).

Although Buchanan claims that he developed painful sores on his residual limb when he was unable to shower in D-pod,[96] the defendants provide medical records showing that he was examined by medical providers on several occasions during the relevant period of time, but reported no such injury to his amputated leg.  Those records show that Buchanan was evaluated by a triage nurse on

---

[95]<u>Id.</u> at 19-24.

[96]Second Amended Complaint, Docket Entry No. 12, p. 11 ¶ 36.

November 11, 2019, who noted no signs or symptoms of distress.[97] On November 12, 2019, the medical department issued Buchanan a shower chair until he could be placed in handicap housing and directed him to notify "Health Services" immediately if he had any concerns.[98]  Buchanan acknowledges that he received the shower chair the following day.[99]

Buchanan had a mental status examination on November 26, 2019, and "did not disclose any concerns" during that appointment.[100]  The treatment provider noted further that his housing assignment was "appropriate."[101]

Buchanan submitted a sick call request regarding his shower chair and reported to the infirmary again on November 28, 2019, but offered no details.[102]  The nurse who saw him offered to perform an evaluation to assess his complaints, but Buchanan "walked off from triage" with no report of pain or discomfort.[103]

---

[97]Triage Notes, Exhibit A to Defendants' MSJ, Docket Entry No. 104-1, p. 148.

[98]HCSO Special Needs Advisement, Exhibit A to Defendants' MSJ, Docket Entry No. 104-1, p. 149.

[99]Second Amended Complaint, Docket Entry No. 12, p. 12 ¶ 40.

[100]Mental Status Exam, Exhibit A to Defendants' MSJ, Docket Entry No. 104-1, p. 151.

[101]Id.

[102]Triage Notes, Exhibit A to Defendants' MSJ, Docket Entry No. 104-1, p. 153.

[103]See id.

On December 1, 2019, Buchanan returned to the infirmary and requested an X-ray because of pain in his left shoulder, which he injured the previous week.[104]  He did not complain of any pain or injury to his amputated leg.[105]  At a follow-up appointment on December 4, 2019, Buchanan reported that his shower chair was now broken and he was provided with a replacement chair.[106]  He did not complain of any pain or injury to his amputated leg, and the provider saw no need for intervention.[107]

On December 11, 2019, Buchanan returned to the infirmary for a follow-up examination in connection with his complaints of pain in his left upper extremity.[108]  During this appointment he was examined for placement in handicap housing after he complained that he was having issues with using the toilet and the shower due to his disability.[109]  He also worried about being at risk for a fall.[110]  A physical examination found "no acute distress," and he did not report any pain or sores on his amputated limb.[111]

---

[104]Triage Notes, Exhibit A to Defendants' MSJ, Docket Entry No. 104-1, p. 154.

[105]See id.

[106]Id. at 155.

[107]See id.

[108]HCSO Vitals, Exhibit A to Defendants' MSJ, Docket Entry No. 104-1, p. 156.

[109]Handicap Housing, Exhibit A to Defendants' MSJ, Docket Entry No. 104-1, p. 156.

[110]See id. at 156-57.

[111]Physical Exam, Exhibit A to Defendants' MSJ, Docket Entry No. 104-1, p. 157.

During the appointment on December 11, 2019, a physician (Dr. Kelvin D. Shepherd) approved Buchanan for handicap housing for assistance with daily living due to his below-knee amputation.[112] When no handicap housing was immediately available, Buchanan was admitted to the infirmary.[113]  During his intake examination by a nurse, Buchanan reported "no complaint of pain or discomfort" and "[n]o cuts, bruises, or open wounds [were] noted."[114]  Buchanan denied any other complaints or concerns during the evaluation of his need for placement in handicap housing.[115]  "No wounds" were noted on his skin at this time.[116]  On December 19, 2019, Buchanan was transferred to handicap housing in unit 3F1.[117]

There is no evidence showing that Buchanan suffered from painful sores or any other type of injury to his amputated leg between his removal from housing unit 2H1 on November 8, 2019, and his return to handicap housing on December 19, 2019.  Buchanan's response to the summary judgment motion does not address the defendants' argument that compensatory damages are barred by the

---

[112]Handicap Housing, Exhibit A to Defendants' MSJ, Docket Entry No. 104-1, p. 158.

[113]See id. at 159.

[114]Infirmary Nurse's Patient Admission, Exhibit A to Defendants' MSJ, Docket Entry No. 104-1, pp. 161-62.

[115]Assessment, Exhibit A to Defendants' MSJ, Docket Entry No. 104-1, p. 165.

[116]Id. at 169.

[117]Transfer Screening, Exhibit A to Defendants' MSJ, Docket Entry No. 104-1, pp. 171-72.

-29-

PLRA for lack of a physical injury that is more than <u>de minimis</u>.[118]
The court has no obligation under Rule 56 "'to sift through the
record in search of evidence to support a party's opposition to
summary judgment.'" <u>Adams v. Travelers Indemnity Co. of
Connecticut</u>, 465 F.3d 156, 164 (5th Cir. 2006) (quoting <u>Ragas v.
Tennessee Gas Pipeline Co.</u>, 136 F.3d 455, 458 (5th Cir. 1998)
(internal quotations omitted)).   Because Buchanan has failed to
raise a genuine issue of material fact regarding this issue, his
claim for compensatory damages is precluded by the PLRA.   <u>See</u> 42
U.S.C. § 1997e(e); <u>Alexander v. Tippah County, Mississippi</u>, 351
F.3d 626, 631 (5th Cir. 2003) (per curiam) (agreeing that "the
injury (if any) suffered by the plaintiff was <u>de minimis</u>" and that
the claim for damages was barred by § 1997e(e)).   Therefore, the
defendants are entitled to summary judgment on this issue.

2.   <u>Failure to Accommodate Under the ADA</u>

Buchanan's claim that the defendants failed to accommodate his
disability is governed by Title II of the ADA, which prohibits
"disability discrimination in the provision of public services."
<u>Frame v. City of Arlington</u>, 657 F.3d 215, 223 (5th Cir. 2011).
Specifically, Title II of the ADA provides that "no qualified
individual with a disability shall, by reason of such disability,
be excluded from participation in or be denied the benefits of the

---

[118]<u>See</u> Plaintiff's Response, Docket Entry No. 129, pp. 1-122.

services, programs, or activities of a public entity, or be subjected to discrimination by such entity."  42 U.S.C. § 12132.

"Title II [of the ADA] imposes an obligation on public entities to make reasonable accommodations or modifications for disabled persons, including prisoners." Garrett v. Thaler, 560 F. App'x 375, 382 (5th Cir. 2014) (per curiam) (quoting Tennessee v. Lane, 124 S. Ct. 1978, 1993 (2004) and Pennsylvania Dep't of Corrections v. Yeskey, 118 S. Ct. 1952, 1956 (1998)); see also Cadena v. El Paso County, 946 F.3d 717, 723 (5th Cir. 2020). "[A] public entity's failure reasonably to accommodate the known limitations of persons with disabilities can also constitute dis-ability discrimination under Title II." Windham v. Harris County, Texas, 875 F.3d 229, 235 (5th Cir. 2017) (citations omitted).

"To succeed on a failure-to-accommodate claim, a plaintiff must prove:  (1) he is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered entity; and (3) the entity failed to make reasonable accommodations." Ball v. LeBlanc, 792 F.3d 584, 596 n.9 (5th Cir. 2015) (citation omitted).  To recover monetary damages based on a failure to accommodate a plaintiff must also prove intentional discrimination. See Smith v. Harris County, Texas, 956 F.3d 311, 318 (5th Cir. 2020) (citing Delano-Pyle v. Victoria County, Texas, 302 F.3d 567, 574 (5th Cir. 2002)).  In the context of a failure-to-accommodate claim, intentional discrimination requires actual knowledge that an accommodation is necessary. See Cadena, 946 F.3d at 724 ("[T]his court has affirmed a finding of

-31-

intentional discrimination when a county deputy knew that a hearing-impaired suspect could not understand him, rendering his chosen method of communication ineffective, and the deputy made no attempt to adapt."). If a defendant has attempted to accommodate a plaintiff's disability, then intentional discrimination requires knowledge "that further accommodation was necessary." Id. at 726.

The Fifth Circuit has clarified that intentional discrimination in this context requires a showing of "something more than 'deliberate indifference.'" Id. at 724. Deliberate indifference is already an "extremely high" standard to meet. Domino v. Texas Dep't of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001). To demonstrate deliberate indifference a prisoner must show that the defendant knew of but disregarded an excessive risk to inmate health or safety. See Farmer v. Brennan, 114 S. Ct. 1970, 1979 (1994). The defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. For example, to prevail on a claim of deliberate indifference where serious medical needs are concerned the prisoner must "submit evidence that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." Gobert v. Caldwell, 463 F.3d 339, 346 (5th Cir. 2006) (internal quotation marks and citation omitted). Buchanan does not make this showing where any of the defendants are concerned.

Buchanan does not dispute that he was removed from housing unit 2H1 because he received a conduct report.[119]  The Supreme Court has recognized that "[r]unning a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." Turner v. Safley, 107 S. Ct. 2254, 2259 (1987).  Even where pretrial confinement is concerned courts in the Fifth Circuit accord "the widest possible deference in classifying inmates as necessary to maintain security and preserve internal order." Estrada v. Nehls, 524 F. Supp. 3d 578, 590 (S.D. Tex. 2021) (internal quotation marks and citations omitted), affirmed 2022 WL 2113614 (5th Cir. June 13, 2022), cert. denied 143 S. Ct. 384 (Oct. 31, 2022); see also Perez v. Anderson, 350 F. App'x 959, 962 (5th Cir. 2009) (per curiam) (citations omitted).

Buchanan claims that Gibson violated his rights by assigning him to a housing unit in D-pod after Buchanan pointed out that he was "a transtibial amputee."[120]  Gibson notes, however, that Buchanan's transfer from housing unit 2H1 to D-pod was approved by medical providers.[121]  Gibson states that he had no access to Buchanan's medical records and no personal knowledge about his

---

[119]Second Amended Complaint, Docket Entry No. 12, p. 6 ¶ 14.

[120]Id. at 9 ¶ 28.

[121]See Inmate Transfer Tracking Sheet, Exhibit A to Gibson Declaration (Exhibit K of Appendix to Defendants' MSJ), Docket Entry No. 103-1, p. 57.

disability.[122]  Although Gibson knew that Buchanan was an amputee with a prosthesis,[123] there is no evidence showing that Gibson knew the extent of Buchanan's limitations when placing him in housing unit 2D4 on November 8, 2019, or that Gibson received information indicating that any particular accommodations were needed, but deliberately disregarded a risk to Buchanan's health or safety. For this reason, Buchanan has failed to demonstrate a claim of disability discrimination against Gibson.  See Windham, 875 F.3d at 236 ("Mere knowledge of the disability is not enough; the service provider must also have understood 'the limitations [the plaintiff] experienced . . . as a result of that disability.'") (quoting Taylor v. Principal Financial Group, Inc., 93 F.3d 155, 164 (5th Cir. 1996) (emphasis added)).

Laws received notice of a problem with Buchanan's housing assignment on November 11, 2019, and he promptly contacted Medical Services for a special needs assessment.[124]  Laws suggested that Buchanan be transferred back to handicap housing, but acknowledged that he did not have authority to make housing assignments.[125] Medical records show that Buchanan was evaluated that same day by

---

[122]Gibson Declaration, Exhibit K of Appendix to Defendants' MSJ, Docket Entry No. 103-1, pp. 54-55 ¶¶ 2-4.

[123]See id. at 54 ¶ 3.

[124]Laws Declaration, Exhibit J of Appendix to Defendants' MSJ, Docket Entry No. 103-1, p. 51 ¶ 4.

[125]See id.

a nurse, who noted no signs or symptoms of distress.[126]   On
November 13, 2019, the medical department provided an accommodation
by issuing Buchanan a shower chair with a special needs advisement
dated November 12, 2019.[127]   Laws was entitled to rely on medical
providers, who had the only authority to change Buchanan's housing
assignment at the Jail.[128]   See Smith, 956 F.3d at 319 (citing
Miranda v. County of Lake, 900 F.3d 335, 343 (7th Cir. 2018) ("When
detainees are under the care of medical experts, non-medical jail
staff may generally trust the professionals to provide appropriate
medical attention.")).

Harris did not receive notice of a problem with Buchanan's
housing assignment until she received his grievance letter on
November 27, 2019.[129]   Because Harris had no authority to
investigate claims regarding Jail accommodations, she forwarded the
letter to the HCSO ADA Coordinator on December 12, 2019,[130] and Laws
received it on December 18, 2019.[131]   Laws contacted the medical
department again and learned that Buchanan had been transferred to

_____

[126]Triage Notes, Exhibit A to Defendants' MSJ, Docket Entry
No. 104-1, p. 148.

[127]Second Amended Complaint, Docket Entry No. 12, p. 12 ¶ 40.

[128]Laws Declaration, Exhibit J of Appendix to Defendants' MSJ,
Docket Entry No. 103-1, p. 51 ¶ 3.

[129]Harris Declaration, Exhibit I of Appendix to Defendants'
MSJ, Docket Entry No. 103-1, p. 47 ¶ 4.

[130]See id. at 46-47 ¶¶ 3-4.

[131]Laws Declaration, Exhibit J of Appendix to Defendants' MSJ,
Docket Entry No. 103-1, p. 52 ¶ 4.

housing unit 3F1.[132]  Laws inspected housing unit 3F1 after learning about the transfer and determined that it was adequate to accommodate Buchanan's needs.[133]

As outlined above, the record shows that shortly after Buchanan was transferred to D-pod on November 8, 2019, he was evaluated by a nurse and provided with an accommodation in the form of a shower chair on November 13, 2019.  A county jail is not required to acquiesce to a disabled prisoner's choice of accommodations merely because he has requested them.  See Cadena, 946 F.3d at 725.  Buchanan has not alleged facts showing that the shower chair failed to provide him with meaningful access to a shower in the prison context, where officials are entitled to "deference in their determination of an appropriate accommodation." Wells v. Thaler, 460 F. App'x 303, 313 (5th Cir. 2012) (per curiam) (citing Oliver v. Scott, 276 F.3d 736, 745 (5th Cir. 2002); Elliott v. Lynn, 38 F.3d 188, 190–91 (5th Cir. 1994)).  Buchanan has not shown that he was denied a reasonable accommodation following his transfer from housing unit 2H1.

Moreover, there is no showing that Laws or the other defendants knew that Buchanan needed additional accommodations after the shower chair was issued, but failed to provide them before he was transferred to housing unit 3F1.  This is insufficient to establish an intentional failure to accommodate by

_____

[132]See id. at 52 ¶ 5.

[133]See id. ¶ 6.

the defendants.  See Cadena, 946 F.3d at 726; Smith, 956 F.3d at 319 (absent actual knowledge that additional accommodations were needed, staff at the Harris County Jail did not intentionally discriminate against the plaintiff by failing to provide additional accommodations).  Because Buchanan has not raised a genuine issue of material fact showing that the defendants intentionally failed to accommodate his disability with the requisite deliberate indifference, his ADA claim fails as a matter of law and the defendants are entitled to summary judgment.

## IV.  Conclusion and Order

Based on the foregoing, the court **ORDERS** as follows:

1. Defendants Coronda Harris, William Laws and William Gibson's Motion for Summary Judgment (Docket Entry No. 103) is **GRANTED**.

2. Defendants' Motion to Strike Plaintiff's Response Due to Noncompliance With Court Rules, Motion to Strike Exhibits and Reply in Support of Their Motion for Summary Judgment (Docket Entry No. 131) is **DENIED AS MOOT**.

**The Clerk is directed to provide a copy of this Memorandum Opinion and Order to the parties.**

**SIGNED** at Houston, Texas, on this 13th day of March, 2023.

SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE